## Preece, et al. v. Wolford, et al.

(Decided December 8, 1922.)

### Appeal from Pike Circuit Court.

1. Specific Performance—Contract for Sale of Land—Survey.—Stipulations in a contract for the sale of land, providing that the sellers would cause the land to be surveyed and perfect the title to the satisfaction of the purchasers, and also that the sale should become null and void upon the failure of the purchasers to accept the conveyance and pay for the land at the price agreed on, do not render the contract unilateral, since, upon the performance of the conditions imposed upon the sellers, the obligations of the purchasers to pay the purchase price became fixed.

2. Specific Performance—Contract by Co-parceners—Infants.—A contract by several co-parceners to sell a tract of land is not rendered void as to those who are sui juris and are able to perform, by reason of the fact that two of the proposed sellers were infants and the contract as to them could not be enforced.

3. Specific Performance—Pleading—Burden of Proof.—In a suit by the vendee for specific performance of a contract, where there is an issue in the pleadings as to complainants' ability to perform,

the burden is on the vendee to show that he is able to perform, and if he fails to introduce any evidence in support of his averment to that effect a decree of specific performance is unauthorized.

C. M. WHITT and F. B. SHANNON for appellants.

ROSCOE VANOVER, W. W. BARRETT and O. A. STUMP for appellees.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

This action was instituted in the Pike circuit court by the five children of H. J. Preece, who died intestate in Pike county, Kentucky, the owner of 350 acres of land. They sought the cancellation of a contract of December 19, 1916, for the sale of land. The defendants, J. M. and E. S. Wolford, filed answer and counterclaim, admitting the execution of the contract and alleging their readiness and ability to carry out its terms. They prayed for a specific performance of the entire contract, but if that could not be done for its performance as to the three adult plaintiffs. The answer and counterclaim were denied by reply, and an amended petition was filed attacking the validity of the contract on the ground that it was lacking in mutuality, and also because Cosby Preece, guardian for the two infant plaintiffs, had unlawfully agreed therein to institute a suit and procure a good title to their interest in the land, and to convey the same to the defendants. The cause was submitted on demurrer to the petition as amended, and for judgment on the whole case without the taking of any proof. The court below cancelled the contract as to the two infant plaintiffs, but sustained the demurrer to the petition as to the three adult plaintiffs and ordered a specific performance of the contract as to them. From that judgment they have prosecuted this appeal.

The contract was between the three appellants, Cosby Preece, widow of H. J. Preece, Lew Preece and Mattie D. Preece, his infant children, by their guardian, Cosby Preece, on the one part, and appellees, the intended purchasers, on the other. It provided for the sale of 350 acres of land, at the rate of $55.00 an acre, except as to that portion wherein the coal and minerals were reserved; and, further, that Cosby Preece would cause an action to be instituted for the purpose of procuring title to the one-fifth interest each of Lew Preece and Mattie

Preece, and when the title was perfected to the satisfaction of the second parties a deed of conveyance would be made. Five months, or longer if necessary, from the date of the contract was given to the sellers in which to perfect title; and it was provided that, on the failure of the purchasers to pay for the land as stipulated in the contract, the agreement was to be null and void.

The first insistence of appellants is that the petition stated a cause of action in their behalf. The ground of this contention is that the contract is unilateral, in that under the last mentioned clause it was optional with the proposed purchasers as to whether they would take the land upon the perfecting of the title; and it is further argued that the agreement on the part of appellees to pay for the land when the title was perfected to their satisfaction was not binding on them, and likewise rendered the contract unilateral. Neither of the contentions is maintainable. The stipulation that the agreement should become null and void upon the failure of the purchasers to pay for the land was at most surplusage, since, upon the performance of the conditions which the sellers imposed upon themselves, the obligation of the purchasers would become fixed, and, in the event of their failure to comply with the contract, the sellers could elect to treat the contract as void or to sue for its breach or for specific performance. This is also true as to the stipulation with regard to perfecting the title to the satisfaction of the proposed purchasers. Appellees did not have the right, under that clause, to decline to carry out the contract if a good title was offered, nor were they constituted therein the sole judges of the validity of the title. If appellants had presented to them, within the time stated in the contract, a deed carrying a good title, the obligation to pay the purchase price agreed on would have attached, and a court of equity, in such circumstances, would certainly have required appellees to perform the contract. In no event, therefore, could either of the stipulations complained of operate to excuse appellees from complying with their obligations to pay for the land, provided appellants performed their undertakings with respect to the making of a survey and the perfecting of title. Hence the contract was not lacking in mutuality.

It is said that the attempted sale of the two-fifths interest held by the infants was unlawful, that the contract is not separable and is, therefore, void as to the appellants. Unquestionably appellants could not enforce

performance as against appellees, for the reason that they could not convey to appellees a perfect title to the entire tract. But it does not follow that appellees cannot be compelled to perform their obligations to the extent of their power so to do. They can convey, according to this record, a good title to a three-fifths interest in the tract, all that they ever agreed to convey. But even if they had contracted to convey the entire tract, the obligation as to the interest that they actually own would still remain, for it is a well settled principle that an undertaking to sell a larger interest in land than the vendor owns does not relieve him from carrying out the contract as to the interest that he does own. This is also true as to co-parceners. The vendor, in such cases, may be held to the contract and the vendee may obtain a decree of specific performance as to such title as the vendor can furnish, and may also have a just abatement from the purchase money for the deficiency of title or quantity or quality of the estate. Williston on Contracts, vol. 2, p. 1379; R. C. L., vol. 25, pp. 248-249. In other words, the vendee in an action brought by him for specific performance of a contract may waive the failure of the vendor to perform portions of his contract, and may elect to take a *pro tanto* performance. In applying these principles to the sale of real estate, an abatement from the purchase price for the deficiency in quantity of the estate sold is uniformly allowed. Appellants, therefore, cannot say that the contract as to them is void, or that specific performance as to them should not be decreed, because that part of the contract that is unenforcible does not affect any obligation that they assumed or prejudice any right or interest that they have. The averments of the petition as to the invalidity of the contract are no stronger than the contract itself. Looking to that instrument for an answer to the questions argued, we conclude that it is binding on appellants to the extent of their interest in the land and that it was not error to sustain the demurrer to the petition.

The next contention presents a question more difficult of solution. The contract was executed December 19, 1916, and apparently nothing was done by any of the parties with regard to requiring its fulfillment until after this suit was filed in September, 1918, although by its terms it bound Cosby Preece to have the land surveyed and the title perfected within five months. The answer and counterclaim admitted the execution of the contract,

alleged appellees' willingness to carry it out in its entirety, and also averred that, if it was not binding on the two infant children as to two-fifths of the land, appellees were ready, able and willing to pay the three adult plaintiffs for their three-fifths interest in the land, at the price per acre agreed on in the contract; that they had always been able, ready and willing so to do, and then offered to do so if appellants would furnish them with a survey and plat to ascertain the acreage and tender them a deed for their three-fifths interest. The reply to the answer and counterclaim denied the ability of appellees to perform the contract, and alleged that they had refused to accept a conveyance from the adult plaintiffs, for the reason that they (appellees) contended that they had purchased the entire boundary and were not bound to accept a conveyance of a part of the property. This affirmative allegation was put in issue. No proof was taken. Hence we have an issue in the case as to the ability of appellees to pay for the three-fifths interest of appellants.

The judgment, in our opinion, is erroneous. In suits for specific performance, the general burden of proof, as in other cases, rests on the plaintiff. He must show that he has complied with the contract, or, if compliance on his part was not possible because of some fault of the other party, that he is ready, able and willing to perform his part. 25 R. C. L. 335-336. In Lewis v. Herndon, 3 Litt. 358, it is stated that the vendor of land who files a bill for specific execution of a contract must show himself able, as well as willing, to make a clear title. This accords with the general rule laid down in Cyc. vol. 36, p. 695, where it is said: "The burden of proof is on the vendor to show a good title, where that is denied in the vendee's answer, or the vendee in his answer insists that the vendor exhibit his title, or the vendee refuses to perform on account of alleged defects." We can see no reason why the same rule should not apply to the vendee who seeks a specific performance. When the averments of his petition as to ability to perform are traversed, he must introduce some proof to sustain his cause. The offer of appellees to perform, made in their counterclaim, was not traversed, and, indeed, it is not such an allegation or statement as could be traversed. That offer, as also perhaps the filing of the counterclaim, may be considered as raising an irrebuttable presumption of willingness to perform, but certainly

it created no presumption on the issue made in the pleadings as to the ability of appellees to perform. Where the amount of the consideration is definitely known the offer to perform should be accompanied with a tender, but where, as in this case, the consideration is not definitely known, and there is an issue as to the claimant's ability to carry out his part, some evidence should be introduced to sustain the burden that he assumes in asking a specific performance. Appellants, with their mother, agreed in the contract to have the farm surveyed and to convey good title. It is true that they were paid $50.00, but that amount, in all probability, would not nearly cover the costs of a survey and an examination of the title. It would, therefore, be unfair to compel them to incur the cost of carrying out their obligation for the purpose of meeting the demand of appellees when the record does not show that appellees, when their demands are satisfied, are able to comply with their part of the contract. The burden of proof was on appellees to show their ability to perform, and, that not having been done, a judgment for specific performance was unauthorized.

We have already determined that on the allegation of appellants' petition, as amended, they were not entitled to a cancellation of the contract. Counsel for appellants contend that appellees were guilty of such laches as ought to preclude the relief of specific performance. But that is a question not so presented in this record that it can be determined. It may be observed, however, in regard to that subject, that laches precluding specific performance may consist of failure promptly to prosecute a suit for the execution of the contract, although it never exists if the failure was the result of the acts of the other contracting party in attempting to deceive the complainant or to deprive him of the benefit of his contract. We are unable to determine, from this record, what the conduct of appellees was after the expiration of the time in which the sellers agreed to have the land surveyed and submit the title for approval. It must, therefore, be assumed that they were not remiss, and on that point appellants' contention is denied. But, under the pleadings, the burden of proof was on appellees to show their ability to perform the contract. They failed to offer any evidence on that issue, and, on that ground, the judgment is reversed.