PREMIER TITLE COMPANY, Plaintiff-Appellee, v. DUANE DONAHUE, Defendant-Appellant.

Second District   No. 2—00—1076

Opinion filed March 1, 2002.

Duane Donahue, of Angola, appellant *pro se.*

Robert H. Rappe, Jr., of Freedman, Anselmo, Lindberg & Rappe, of Naperville, for appellee.

JUSTICE GROMETER delivered the opinion of the court:

Defendant, Duane Donahue, appeals from a series of orders entered by the circuit court of McHenry County. Defendant first assigns error in the circuit court's grant of summary judgment in favor of plaintiff, Premier Title Company. Defendant next contends that the court erred in denying his motion for summary judgment. Finally, defendant argues that the trial court improperly denied his motion for sanctions. For the reasons that follow, we affirm.

## BACKGROUND

Plaintiff acted as the closing agent for a real estate transaction in which defendant was the seller. The closing occurred on August 8, 1997. At the time of the closing, real estate taxes were unpaid on the property for 1995. The first installment due in 1996 was unpaid as well. Plaintiff noted on its title commitment that defendant's 1995 real estate taxes had been sold and the first installment of the 1996 taxes were past due. This was unacceptable to the buyer. Hence, plaintiff and defendant entered into an indemnity agreement whereby defendant would place $3,500 in an escrow with plaintiff and plaintiff would issue a title insurance policy. The unpaid taxes were listed as exceptions in the agreement. The agreement required plaintiff to remove these exceptions by August 21, 1997. Upon the removal of the exceptions, any funds remaining were to be disbursed to defendant.

Plaintiff redeemed the 1995 real estate taxes and reimbursed itself from the escrow. Plaintiff then returned the balance of the funds to defendant. The first installment of the 1996 taxes had not yet been paid. Plaintiff subsequently paid the first installment of the 1996 taxes pursuant to the title insurance policy it had issued. Plaintiff

requested that defendant tender $1,189.72 to cover this expense. Defendant refused to comply.

Plaintiff subsequently filed a small claims action to recoup this sum. Both parties moved for summary judgment. The trial court granted plaintiff's motion and denied defendant's. Defendant also moved for sanctions, pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137), alleging that plaintiff failed to provide notice of its motion for leave to file its summary judgment motion and failed to notify defendant that the date originally set for trial had been stricken. Defendant asserts that, as a result, he prepared for trial on the original date and traveled nearly 500 miles to attend court that day. The trial court denied this motion.

## ANALYSIS

Determining whether the trial court's resolution of the summary judgment motions was proper requires us to construe the contract that created the escrow. Because of the posture of this case, the granting of one of the parties' summary judgment motion entails the denial of the other's. Accordingly, we will not address the motions separately.

■ We review *de novo* a trial court's grant of summary judgment. *Corona v. Malm*, 315 Ill. App. 3d 692, 694 (2000). Summary judgment is appropriate only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Stewart v. Jones*, 318 Ill. App. 3d 552, 557-58 (2001). The interpretation of a contract is a question of law and therefore may properly be decided on a motion for summary judgment. *Fitzwilliam v. 1220 Iroquois Venture*, 233 Ill. App. 3d 221, 237 (1992).

■ The primary goal in construing a contract is to give effect to the intent of the parties. *Omnitrus Merging Corp. v. Illinois Tool Works, Inc.*, 256 Ill. App. 3d 31, 34 (1993). When the language of a contract is clear, a court must determine the intent of the parties solely from the plain language of the contract. *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 344 (2000). The language of a contract must be given its plain and ordinary meaning. *Owens*, 316 Ill. App. 3d at 344. When interpreting a contract, a court must consider the document as a whole, rather than focusing upon isolated portions. *Spectramed, Inc. v. Gould, Inc.*, 304 Ill. App. 3d 762, 770 (1998).

In the present case, each party relies on a different subpart of the contract. Defendant relies on the following provision:

> "If this Title Indemnity-Escrow Agreement is not terminated within thirty (30) calendar days of the date set forth in paragraph (3) on the preceding page, the Agent Escrowee shall thereafter charge a reasonable annual service or handling fee to be paid out of the deposit. The fee shall consist of $75.00 or 10% of the amount deposited, per month, whichever sum is greater."

According to defendant, this provision demonstrates that the primary intent of the parties was to create a relationship that would terminate within 30 days. Defendant further asserts that the provision indicates that the disbursal of the deposited funds would terminate the agreement. Defendant concludes that the agreement terminated when plaintiff disbursed the balance of the remaining funds to him, thus terminating his obligations under the contract. Limiting our consideration to the plain language of this subpart, defendant's interpretation is not unreasonable. The provision speaks in terms of the agreement itself terminating, rather than additional fees becoming due if any of the deposited funds were retained past a certain point. Since this provision speaks of amounts being paid out of funds deposited, it is not unreasonable to conclude that the termination of the agreement is related to the disbursal of the deposited funds.

Plaintiff relies on a different provision. This provision states that defendant agrees:

> "To forever defend and save the Agent-Escrowee, and PREMIER TITLE COMPANY, harmless from all the Exceptions, from any loss, costs, damages, attorneys' fees and expenses of every kind which they may suffer, expend or incur under, or by reason of the title insurance policy, on account of the Exceptions, or on account of the assertion or enforcement or attempted assertion of enforcement thereof or of any rights existing or later arising, or which may at any time be claimed to exist under or growing out of any of the exceptions."

Pointing to the plain language of this subpart, specifically "forever," plaintiff contends that the agreement creates on defendant's part an ongoing obligation, unrelated to the disbursal of any escrowed funds, to indemnify it against any losses growing out of the "Exceptions." The "Exceptions" listed in the agreement refer to the unpaid real estate taxes. Plaintiff presents a reasonable reading of the language upon which it relies.

Thus, we are presented with two conflicting provisions. Read in isolation, they create an apparent ambiguity as to the parties' intentions. However, in interpreting this contract, we must consider the document as a whole (see *Spectramed, Inc.*, 304 Ill. App. 3d at 770) and determine if these two subparts are reconcilable.

The resolution of this appeal turns upon the resolution of this conflict. Plaintiff does not address this conflict. Defendant briefly asserts that any ambiguities in a contract should be resolved against its drafter, which is, apparently, plaintiff in this case. See *Brewer v. Custom Builders Corp.*, 42 Ill. App. 3d 668, 672 (1976). However, we will resort to this doctrine, known as *contra proferentem*, only if we

fail to ascertain the intent of the parties using ordinary principles of contractual interpretation. See *Farwell Construction Co. v. Ticktin*, 84 Ill. App. 3d 791, 798-99 (1980). The rule has been described as "at best a secondary rule of interpretation, a last resort which may be invoked after all the ordinary interpretive guides have been exhausted." *Bunge Corp. v. Northern Trust Co.*, 252 Ill. App. 3d 485, 493 (1993); see also *National Tea Co. v. Commerce & Industry Insurance Co.*, 119 Ill. App. 3d 195, 209 (1983). In fact, as we understand it, the rule is not an interpretive one at all. Instead of seeking to divine the intent of the parties, the rule merely assigns the risk of an unresolvable ambiguity to the party responsible for creating it. Thus, before we apply this rule, we will attempt to resolve the apparent conflict between the two sections of the agreement.

■ Taking the contract as a whole, we believe that it unambiguously expresses the intent of the parties that defendant was under a continuing obligation to indemnify plaintiff regarding expenses plaintiff incurred resulting from the exceptions listed in the contract. Defendant's interpretation, that the agreement terminated with the disbursal of the escrowed funds, violates at least three well-established principles of contractual construction. Plaintiff's interpretation does not.

First, it has been recognized that "it is a basic principle of contract construction that where two clauses conflict, it is the duty of the court to determine which of the two clauses most clearly expresses the chief object and purpose of the contract." *Harris Trust & Savings Bank v. Hirsch*, 112 Ill. App. 3d 895, 900 (1983). Further, "a clause which requires something to be done to effect the purpose of the contract is entitled to greater consideration than one which does not." *Harris Trust & Savings Bank*, 112 Ill. App. 3d at 900. Read as a whole, it is clear that the chief purpose of this contract is to insure that defendant would be responsible for the unpaid real estate taxes. The section plaintiff relies on effectuates the purpose of the contract by requiring defendant to "defend and save" plaintiff from all losses incurred on account of the unpaid taxes. The section defendant relies on deals with fees that may be imposed should the agreement continue for more than 30 days beyond the date set for removing the exceptions. The section on which plaintiff relies is related to the central purpose of the contract, while the one upon which defendant relies deals with a collateral matter. Therefore, the section upon which plaintiff relies is entitled to more weight in ascertaining the parties' intent as to when the agreement would terminate.

Second, defendant's construction of the contract violates the principle that requires that a contract be construed such that none of

its terms are regarded as mere surplusage. See *J.B. Esker & Sons, Inc. v. Cle-Pa's Partnership*, 325 Ill. App. 3d 276, 285 (2001). Defendant's interpretation makes the term "forever," contained in the section upon which plaintiff relies, meaningless. "Forever" would last no longer than the distribution of the funds held in escrow. On the other hand, plaintiff's interpretation suffers from no such defect. The term "forever" applies to defendant's obligation to indemnify plaintiff, while the section upon which defendant relies allows for the imposition of additional fees in certain circumstances. Neither provision, nor any portion thereof, is rendered meaningless. This provides further support for plaintiff's interpretation of the contract.

Third, defendant's interpretation disregards the rule that, in the event of a conflict, specific provisions are entitled to more weight in ascertaining the parties' intent than general provisions. See *Water Pipe Extension, Bureau of Engineering Laborers' Local 1092 v. City of Chicago*, 318 Ill. App. 3d 628, 638 (2000). The section relied on by plaintiff specifically addresses defendant's obligation to indemnify plaintiff. The section defendant relies on deals with matters unrelated to this obligation, and thus only addresses termination tangentially. Again, plaintiff's interpretation prevails.

Accordingly, we accept plaintiff's interpretation of the contract and reject defendant's. The contract imposed a continuing duty on defendant to indemnify plaintiff for losses arising out of the unpaid real estate taxes. Defendant also briefly argues that where a party "has performed his obligations under an agreement, he cannot be liable for breech [*sic*] of that agreement." As we have concluded that the contract imposed a continuing obligation upon defendant to indemnify plaintiff, defendant has not performed his obligations. Thus, this argument is meritless.

■ Defendant next contends that the agreement between him and plaintiff merged into the real estate deed at the closing. Although still a part of Illinois law, the merger doctrine is disfavored by modern courts. *Hagenbuch v. Chapin*, 149 Ill. App. 3d 572, 576 (1986). Exceptions to the doctrine exist, two of which are relevant to the instant case. First, executory agreements for the performance of separate and distinct obligations beyond the conveyance itself do not merge with a deed at closing. *Petersen v. Hubschman Construction Co.*, 76 Ill. 2d 31, 39 (1979). In the present case, defendant's obligation to plaintiff was distinct from defendant's obligation to convey the real estate to the buyer. Second, obligations that are not to be performed until after delivery of a deed do not merge. *Mearida v. Murphy*, 87 Ill. App. 3d 87, 89 (1980). The contract between the parties required that all exceptions be removed by August 21, 1997. The closing in this case occurred

on August 8, 1997. Both exceptions are applicable; hence, the contract between plaintiff and defendant did not merge into the deed at closing.

■ Finally, we turn to the trial court's denial of defendant's motion for sanctions made pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137). Defendant's motion is based on the alleged failure of plaintiff to provide notice of plaintiff's motion for leave to file a summary judgment motion and the cancellation of the trial date that was originally set. We will overturn a trial court's decision to grant or deny a motion for sanctions only if the trial court abused its discretion. *Baker v. Daniel S. Berger, Ltd.*, 323 Ill. App. 3d 956, 963 (2001). The record on appeal contains no transcript of the hearing where the motion was denied, no written order explaining the trial court's decision, and no bystander's report (see 166 Ill. 2d R. 323(c)) of the proceeding where this motion was decided. We do not know upon what basis the trial court exercised its discretion. It is the appellant's burden to present a sufficient record to support any claims of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Any doubts arising as a result of the record being inadequate must be resolved against the appellant. *Foutch*, 99 Ill. 2d at 392. Consequently, we are unable to determine if the trial court abused its discretion. See *In re Marriage of Blinderman*, 283 Ill. App. 3d 26, 34 (1996) ("Absent a transcript of the hearing on the distribution of the assets, there is no basis upon which to determine whether the circuit court abused its discretion in denying defendant's motion").

## CONCLUSION

In light of the foregoing, the order of the circuit court of McHenry County granting plaintiff's motion for summary judgment and denying defendant's motion for summary judgment is affirmed. The order of the circuit court denying defendant's motion for sanctions is also affirmed.

Affirmed.

HUTCHINSON, P.J., and McLAREN, J., concur.